PETER LIPPINCOTT'S ADMINISTRATOR, PROSECUTOR, v. THE TOWNSHIP OF HOWELL, DEFENDANT.

Submitted March 20, 1901—Decided June 10, 1901.

When a mortgage was assigned by the owner thereof to another, who held certain notes of the assignor, as collateral security for the payment of the notes, the mortgage was taxable as the personal property of the assignor so long as the notes remained unpaid and the mortgage continued to be held as security for the payment.

On *certiorari.*

Before Justices VAN SYCKEL, GARRISON and GARRETSON.

For the prosecutor, *Aaron E. Johnston.*

For the defendant, *Acton C. Hartshorne.*

The opinion of the court was delivered by

GARRETSON, J. A pluries tax warrant was issued by a justice of the peace, upon the request of the township committee of Howell, to collect the arrears of taxes for the years 1895, 1896, 1897, 1898 and 1899, assessed against Stout upon a certain mortgage given to Stout, out of the goods and chattels of one Lippincott.

The only question argued before us was as to whether Stout or Lippincott was liable to pay the tax on the mortgage.

Stout took the mortgage in 1854, and on the 22d of October, 1894, his administratrix, Elizabeth M. Stout, assigned it to Lippincott by an assignment containing these words: "This

assignment being made to secure the payment of two certain promissory notes, which notes were given for the benefit of the estate [here follows copies of two notes], and to secure any and all renewals thereof, and upon the payment of said notes, with interest, and all renewals thereof, the said bond and mortgage to be re-assigned to said Elizabeth M. Stout or her heirs, said renewals not to extend over one year from this date." The notes held by Lippincott were not paid within one year from the date of the assignment, nor was the mortgage re-assigned to Stout within that time. Lippincott or his estate continued to hold the mortgage under the above assignment until March 7th, 1900, on which last-mentioned date Stout's administratrix made an absolute assignment of the mortgage to Lippincott's administrators for a consideration therein mentioned of $5,228.06, being the total amount of principal and interest then due on the mortgage, and which assignment paid the principal of the notes of Stout's held by Lippincott, and the interest thereon for the years 1895, 1896, 1897, 1898 and 1899, and during which years the mortgage was assessed to Stout. Stout collected six months' interest on the mortgage during the year 1895, while it was held by Lippincott under the first assignment. While the mortgage continued to be held by Lippincott as security for Stout's mortgage, it still remained Stout's property, upon which he had a right to collect the interest from the mortgagor, and Stout's notes in Lippincott's hands were Lippincott's property, upon which Lippincott was entitled to collect interest. Stout's notes in Lippincott's hands were liable to taxation as Lippincott's property, and it would seem to be unfair that Lippincott should, during the time that these notes remained unpaid, be also taxed upon the mortgage held as collateral security for those notes. Stout, while the notes remained unpaid, might claim deduction for the amount of them from the assessed value of his real and personal estate, so that the result would be that Lippincott would pay taxes upon twice the amount of Stout's indebtedness to him, and Stout would not only be relieved from the taxes upon the mortgage, but

could use his notes held by Lippincott to reduce, by the amount thereof, the assessed value of his other real and personal property.

That both Stout and Lippincott regarded the first assignment of the mortgage only as security for the payment of the notes and not as a transfer of the property therein, and that the notes remained in full force, appears from the fact that when the absolute assignment of the mortgage was made on the 7th of March, 1900, it was so made as payment of the notes, and the interest on the notes was reckoned up to the date of the assignment. It was not considered by either party that the mortgage paid the notes and the notes became extinguished at the expiration of one year from the date of the first assignment by reason of the clause therein that renewals of the notes were not to extend over one year from the date of the assignments because, on the 7th of March, 1900, the date of the absolute assignment, the notes were treated as existing obligations, and interest on them was reckoned to that date.

We therefore conclude that the property in the mortgage remained in Stout during the years 1895, 1896, 1897, 1898 and 1899, and that it was properly assessed as Stout's property during those years, and the warrant directing payment of the same out of Lippincott's property was illegal and should be set aside.